**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JUAN E. SANTANA MORALES, ET AL.,<br><br>   Plaintiffs<br><br>   v.<br><br>NYDIA COTTO VIVES,<br><br>   Defendant | Civ. No. 02-1107 (PG) |

**OPINION AND ORDER**

On March 27, 2006, following oral arguments, the Court denied defendant Nydia Cotto Vives' "Motion in Limine" (Docket No. 106). The Court now elaborates its reasoning.

**DISCUSSION**

Defendant moved to exclude the following documents from plaintiffs' list of documentary evidence to be presented at trial:

(1) the three memoranda of the Administration of Correction, dated August 5, 1996, September 25, 1996, and November 26, 1996;

(2) the excerpts from a comprehensive report by the expert witness in the case of <u>Morales Feliciano v. Rosello Gonzales</u>, Civil No. 79-04(PG);

(3) the opinion issued by the Court on January 25, 2000 in the <u>Morales Feliciano</u> case, Civil Nol. 79-04(PG); and

(4) the conviction of two individuals accused by the plaintiff, namely Gerardo Santa Ocasio and Hector Rivera Vega.

Defendant argued that the documents were irrelevant, that they were unfairly prejudicial, and that they were inadmissible hearsay. The Court shall address each *seriatim*.

    **I.    The three memoranda of the Administration of Corrections**

The Complaint alleges that on or about December, 1996, co-defendants informed plaintiff Juan Emilio that he would be transferred to the maximum

security section of Las Cucharas Prison, popularly known as the Green Monster ("Monstruo Verde"). (Docket No. 52 at ¶13.) Plaintiff informed defendants that he could not live at the Green Monster area because, due to the place he had grown up, the gang that controlled Monstruo Verde was hostile to him. (Id. at ¶15.) It is further alleged that defendants knew as of January of 1997 that the rival gangs in the Las Cucharas Prison were at war within the prison. Furthermore, it is alleged that defendants knew that various inmates had been killed at the hands of other inmates as a result of prison gang violence and rivalry. Accordingly, plaintiffs aver that defendants knew, or should have known, that placing an inmate, such as Juan Emilio, with the population pertaining to the particular gang at Monstruo Verde would inevitably lead to his injury, and that it was foreseeable for less dangerous inmates, such as plaintiff, to fall prey to the most dangerous, maximum security prisoners, who were improperly allowed to roam free among the general population. (Id., at ¶¶ 16-19.)

Less than a week after his arrival at Las Cucharas, on or about January 18-19, 1997, plaintiff Juan Emilio was sexually and physically assaulted by other inmates who restricted his liberty and took turns brutally raping and sodomizing him. (Id. at 23.) It is plaintiff's position that defendant's conduct was in callous and wanton disregard as well as deliberately indifferent to Juan Emilio's constitutional rights to be free from cruel and unusual punishment. Moreover that despite their knowledge that dangerous prisoners were being allowed to roam freely throughout the maximum security area of Las Cucharas Prison, defendants proceeded to transfer Juan Emilio and did not segregate the prisoners to avoid unnecessary confrontations between members of rival gangs.

The three memoranda defendant seeks to exclude clearly make reference to the dangerous conditions at the Las Cucharas Prison. They include matters such as the risk of having the inmates roam freely without proper

Civ. No. 02-1107 (PG)                                                    Page 3

supervision, that the inmates were changing cells without proper authorization, the lack of security personnel, the use and trafficking of illegal arms and drugs within the prison, as well as gang rivalry and violence.  Indeed, the contents of the three memoranda are indicative of the general unsafe atmosphere that permeated throughout the Las Cucharas prison just two months before plaintiff was transferred there.  Without a doubt, these documents are relevant to the issues before the Court regarding the prison conditions at Las Cucharas at the time plaintiff was assaulted.  See Fed.R.Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.")

   Federal Rule Of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  See Fed.R.Evid. 403.  "Under Fed.R.Evid. 403, courts determine whether, as a matter of law, the probative value of otherwise relevant and admissible evidence is substantially outweighed by unfair prejudice." U.S. v. Munoz-Franco, 203 F.Supp.2d 102, 106-107 (D.P.R. 2002). See Swajian v. General Motors Corp., 916 F.2d 31, 34 (1st Cir.1990)(citing 22 Wright & Graham, Federal Practice and Procedure, §§ 5214, 5221). Under this rule, the Court has "considerable latitude in determining whether to admit or exclude evidence". Santos v. Sunrise Medical, 351 F.3d 587, 592 (1st Cir., 2003) (citing Espeaignnette v. Gene Tierney, 43 F.3d 1, 5 (1st Cir.1994)). However, "[b]ecause Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly." Campbell v. Keystone Aerial Surveys, 138 F.3d 996, 1004 (5th Cir., 1998) (quoting United States v. Morris, 79 F.3d

Civ. No. 02-1107 (PG)                                                    Page 4

409, 411 (5th Cir., 1996))(citations omitted). See <u>Bado-Santana v. Ford Motor Co.</u>, 364 F.Supp.2d 79, 87 (D.P.R. 2005).

Having reviewed the evidence and the allegations in the complaint the Court finds that the evidence should not be excluded. All evidence one party presents in its favor will be prejudicial to the opposing party's position. This, however, does not mean it should be excluded. In sum, the Court finds that the probative value of the memoranda is not outweighed by any unfair prejudice they might cause and thus the balance tips in favor of admission.

**II. The excerpts from a comprehensive expert witness report in the case of <u>Morales Feliciano v. Rosello Gonzales</u>, Civil No. 79-04(PG)**

Defendants argue that these excerpts are hearsay and should be excluded. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. Generally, hearsay evidence is inadmissible except as provided by the rules of evidence. Fed.R.Evid. 802. Defendant argues that because the expert (the declarant) will not be available at trial to be cross-examined, his report should be excluded as inadmissible hearsay.

Fed.R.Evid. 803(8) provides, however, that in civil actions and proceedings, regardless of the availability of the declarant, factual findings resulting from an investigation made pursuant to authority granted by law contained in public records, reports, statements, or data compilations, are admissible unless the sources of information or other circumstances indicate lack of trustworthiness.

The excerpts of the expert report at issue are part of the Comprehensive Report of the Expert Witness issued on July 15, 1999 in the <u>Morales Feliciano</u> case. (See Civil No. 79-04, Docket No. 6604.) The Report contains five (5) volumes of information compiled by the expert regarding

Civ. No. 02-1107 (PG)                                                  Page 5

the prison conditions in Puerto Rico's Correctional Facilities.  The investigation was conducted as instructed by the Court and pursuant to such authority. No one has questioned the credibility or trustworthiness of the expert or the report.  Therefore, the Court finds no reason why it should be excluded.

Defendant also argues that presenting only an excerpt does not comply with the rule of completeness. Fed.R.Evid. 106. However, because the report is five volumes long and contains information about prisons other than Las Cucharas, it is understandable why plaintiffs would only present the excerpt of the report that relates to the issues and facts of the underlying case.  Accordingly, the Court denies defendant's request. Defendant is also free to seek admission of the portions of the report she thinks would present the proper and complete context of the document.

### III. The opinion issued by the Court on January 25, 2000 in the Morales Feliciano case, Civil No1. 79-04(PG)

Defendant's argument to exclude the Court's January 25, 2000 opinion is basically that it could mislead the jury as to which case it is trying. The Court finds this argument insufficient to exclude the evidence. The reason for jury instructions is precisely to narrow the scope of the jury's analysis to the elements of the cause of action before them.  The Court's instructions will dissipate any possible confusion in the juries' minds regarding their function as judges of the facts of the underlying case. Furthermore, "juries are presumed to follow their instructions." Zafiro v.United States, 506 U.S. 534, 539 (1993).  Hence, the Court finds that under Fed.R.Evid. 403, the probative value is not outweighed by unfair prejudice or confusion of the issues.

### IV. The conviction of two individuals accused by the plaintiff, namely Gerardo Santa Ocasio and Hector Rivera Vega

Defendant argues that because the underlying issue is whether plaintiff was sodomized or not and because these two individuals pled

Civ. No. 02-1107 (PG)                                                  Page 6

guilty to aggravated assault[1], restriction of liberty and weapons law violations, their convictions are irrelevant to the facts of this case. A simple reading of the complaint, however, belies defendant's myopic analysis of the facts surrounding the assault on plaintiff Juan Emilio. It is specifically alleged that on or about January 18-19, 1997, plaintiff Juan Emilio was sexually and physically assaulted by other inmates who restricted his liberty and took turns brutally raping and sodomizing him. (Complaint at ¶ 23.) Hence, the argument that the issue is simply whether he was sodomized or not is without merit. Furthermore, it is alleged that in June 1998, two of the maximum security inmates that assaulted plaintiff Juan Emilio plead guilty to charges of restriction of liberty, threat, and weapons law violations. (Id. at 24.) Accordingly, plaintiffs' documentary evidence of these convictions is clearly relevant to the allegations raised in the complaint.

In sum, upon carefully reviewing the record, the applicable case law, and the documentary evidence at issue, the Court finds no reason why it should be excluded. Therefore, for all the preceding reasons, the Court **DENIES** defendant's Motion in Limine (Docket No. 106.)

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 28, 2006.

                                              S/JUAN M. PEREZ-GIMENEZ
                                              U. S. DISTRICT JUDGE

---

[1] Subsequent to the Court's ruling, defendant amended its September 1, 2005 Answer to the Amended Complaint (Docket No. 78) because she had wrongfully admitted that the two inmates had pled guilty to charges of sodomy. Defendant requested that her answer to the amended complaint, specifically averment 24, be amended to read as follows: "From averment 24 it is admitted that on June 1, 1998, two of the inmates pled guilty to charges of restriction of liberty and weapons law. The rest of the averment is denied." (See Docket No. 115.)